**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3840
_____

UNITED STATES OF AMERICA

v.

VAN N. EPPS,
                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cr-00150-001)
District Judge: Honorable Jan E. DuBois
_____

Argued June 12, 2014

Before: AMBRO and BARRY, <u>Circuit</u> <u>Judges</u>, and RESTANI,[1] <u>Judge</u>.

(Opinion Filed: June 26, 2014)

Leigh M. Skipper, Chief Federal Defender
Brett G. Sweitzer, Assistant Federal Defender
Susan M. Lin, Assistant Federal Defender          [ARGUED]
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
          <u>Attorneys for Appellant</u>

Zane David Memeger, United States Attorney
Robert A. Zauzmer, Assistant United States Attorney

---

[1] The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

Denise S. Wolf, Assistant United States Attorney
Paul G. Shapiro, Assistant United States Attorney        [ARGUED]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
        Attorneys for Appellee

———————

OPINION

———————

RESTANI, Judge

Appellant Van N. Epps appeals following his conditional guilty plea to various child pornography charges. Epps contends that the district court improperly refused to suppress evidence seized from his home pursuant to a warrant that he claims failed to establish probable cause, in part due to allegedly reckless misrepresentations in the warrant affidavit that made Epps's child pornography activity appear to have occurred more recently than it in fact did. For the reasons stated below, we will affirm.[2]

I.

From May 4, 2009, until May 12, 2010, the Pennsylvania Internet Crimes Against Children Task Force (the "Task Force") received information from the National Center for Missing and Exploited Children (the "Center") that an individual had uploaded a series of images and videos of child pornography. These reports from the Center were in turn based on Cyber Tipline Reports by internet service providers covering upload

---

[2] The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

2

activity that took place from February 19, 2009, until August 31, 2009. After investigating the tips, the Task Force provided a summary of its investigation in the form of a report to Agent Roman at the Department of Homeland Security. The report identified a particular suspect: Epps. Epps was linked to the uploads based on similarities between the screen names used to upload the pornographic images and other accounts that contained Epps's name or picture.

The investigation also revealed that the account used to upload the pornographic images was created on a computer at Epps's parents' residence, where Epps previously resided. Agent Roman discovered that Epps had moved to a new address since the date of the uploads. In preparing the affidavit used to seek a search warrant for this new residence, Agent Roman apparently relied exclusively on the Task Force's report without ever reading the underlying Cyber Tipline Reports.

A magistrate judge approved the warrant, and in the ensuing search on May 5, 2011, police discovered various forms of child pornography at Epps's new residence. Epps moved to suppress the evidence seized pursuant to the warrant, claiming that the affidavit contained material misstatements because the warrant affidavit incorrectly identified the dates of the Cyber Tipline Reports as the upload dates. Additionally, Epps claimed there was an insufficient nexus established between his new residence that was searched and the location where the earlier child pornography uploads occurred. The district court held an evidentiary hearing and concluded that suppression was not warranted. Epps conditionally pled guilty, and he timely appealed.

## II.

When reviewing a magistrate's probable cause determination, "our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made." United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993).

Where a defendant raises a challenge under Franks v. Delaware, 438 U.S. 154, 155–56 (1978), claiming that the warrant affidavit did not establish probable cause due to misrepresentations, "the question whether a particular false statement in a warrant affidavit was made with reckless disregard for the truth is subject to reversal only upon a finding of clear error." United States v. Brown, 631 F.3d 638, 642 (3d Cir. 2011). "Allegations of negligence or innocent mistake are insufficient." Franks, 438 U.S. at 171. "When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the 'falsehood created by an omission by supplying the omitted information to the original affidavit.'" United States v. Yusuf, 461 F.3d 374, 384 (3d Cir. 2006) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 400 (3d Cir. 1997)).

## III.

Epps first contends that the warrant affidavit was riddled with reckless or intentional material misrepresentations because the dates in the warrant correspond to the dates on which child pornography uploads were reported to the Task Force by the Center

4

rather than the dates on which those uploads actually occurred. Epps argues that the proper course of action is to excise these dates from the warrant affidavit, leaving the warrant affidavit devoid of any reference to the dates of the uploads and therefore insufficient to establish probable cause. The government responds that the misstatements in the warrant affidavit were based on Agent Roman's mere negligence in failing to read the underlying Cyber Tipline Reports and, in any event, were immaterial to the probable cause determination because the evidence that Epps possessed child pornography at his home was not stale.

In an evidentiary hearing, Agent Roman testified that he did not look at the underlying Cyber Tipline Reports when drafting his warrant affidavit, relying instead on the report from the Task Force. Although certainly the better course of action would have been for Agent Roman to have reviewed the underlying documents, we cannot say that the district court clearly erred in crediting this testimony and finding that Agent Roman acted negligently, but not recklessly or intentionally, when inserting the incorrect dates into the warrant affidavit. We note that the dates were months, not years, apart, but because only negligence is involved, we need not reach the question of whether these misstatements were material to the finding of probable cause.

IV.

Epps also contends that the warrant affidavit failed to establish a sufficient nexus

5

between the place of the illegal conduct (Epps's former residence)[3] and the place actually searched (Epps's new residence). The government responds that probable cause existed to believe that Epps was a collector of child pornography, and consistent with the actions of other collectors, it was reasonable to believe that he kept his collection for long periods of time in a location close to him, his home.

"Although every affidavit ideally would contain direct evidence linking the crime with the place to be searched, a magistrate may issue a search warrant even without direct evidence" that the item sought is in the place to be searched. United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010). "Probable cause can be, and often is, inferred from the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide evidence." Id. (internal quotation marks and brackets omitted). We have recognized previously that collectors of child pornography tend to hoard their collections for long periods of time given the difficulties in obtaining such illegal content without detection. See United States v. Vosburgh, 602 F.3d 512, 528 (3d Cir. 2010).

The evidence here of 234 uploads over a period of months supports the belief that Epps fit the collector profile. Although we have required the government to provide some evidence that a child pornography collector maintains his collection in his home, as

---

[3] In his reply brief, Epps raises for the first time an argument that the warrant affidavit also failed to expressly allege that the illegal uploads were made from a computer in his former residence. Because this argument was not raised below or in the opening brief, however, it has been waived. See Ethypharm S.A. Fr. v. Abbott Labs., 707 F.3d 223, 231 n.13 (3d Cir. 2013).

6

opposed to another location, before authorizing a search of a home, <u>see</u> <u>United States v.</u> <u>Loy</u>, 191 F.3d 360, 365–67 (3d Cir. 1999), we have never required the government to prove that a computer used for uploading child pornography in a former residence was actually moved to a new residence before authorizing a search of the new residence. Under the totality of the circumstances, the magistrate reasonably could have inferred that Epps would take the computer with him or otherwise transfer the digital collection of child pornography when he moved to his new residence less than a year prior to the search.

V.

For the reasons set forth above, we will affirm.